O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | CV 08-5553 PSG (FMOx) | Date | January 7, 2010 |
|---|---|---|---|
| Title | Marla Tidenberg v. Bidz.com | | |

| Present: | The Honorable Philip S. Gutierrez, United States District Judge | |
|---|---|---|
| Wendy K. Hernandez | Not Present | n/a |
| Deputy Clerk | Court Reporter | Tape No. |

| Attorneys Present for Plaintiff(s): | Attorneys Present for Defendant(s): |
|---|---|
| Not Present | Not Present |

**Proceedings:**   (In Chambers) Order Denying Plaintiff's Motion for Class Certification and for Appointment of Class Representative and Class Counsel

Pending before the Court is Plaintiff's Motion for Class Certification and for Appointment of Class Representative and Class Counsel. The matter came on for hearing on December 29, 2009. After considering the moving and opposing papers,[1] as well as oral argument, the Court DENIES the motion.

I.   Background

Defendant Bidz.com ("Defendant") is a California-based company that sells merchandise, including jewelry, over the Internet using a live auction format. *See Third Amended Complaint ("TAC")* ¶¶ 39, 43. On September 30, 2007, Plaintiff Marla Tidenberg ("Plaintiff") participated in an auction on Defendant's website in which she placed the winning bid—of $25.00, plus shipping, handling, and transaction costs—on a tanzanite ring. *See id.* at ¶ 83.

On August 22, 2008, Plaintiff filed this class action suit against Defendant, based principally on allegations that Bidz.com engages in "shill bidding" to drive up the price of the

---

[1] The Court takes this opportunity to express its preference that the table of contents appear at the *front* of memoranda (Defendant) and that the page-limit and font-size requirements set forth in the Court's Standing Order be strictly observed (Plaintiff).

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-5553 PSG (FMOx) | Date | January 7, 2010 |
|---|---|---|---|
| Title | Marla Tidenberg v. Bidz.com | | |

winning bids in its auctions.[2]  *See id.* at ¶ 1.  Plaintiff's Third Amended Complaint ("Complaint") asserts causes of action for violations of 1) Cal. Civ. Code §1750, 2) Cal. Bus. & Prof. Code § 17200, 3) Cal. Bus. & Prof. Code § 17500, 4) Cal. Civil Code § 1709 and § 1710, 5) Cal. Civ. Code § 1572, and 6) the Racketeer Influenced and Corrupt Organizations Act ("RICO") (18 U.S.C. § 1962(c)), as well as for 7) breach of contract and 8) unjust enrichment.

On July 17, 2009, Plaintiff filed this motion ("Motion"), seeking to certify the following class to pursue all Plaintiff's claims under Federal Rule of Civil Procedure 23(b)(3):

> All individuals who bid on a Bidz.com auction and won that auction during the Class Period where other bidders in that auction were, in fact, shill bidders created by or under the control of Bidz.com.

*Motion* 2:20:3-2.  The Class Period is defined as extending from March 19, 2005 to March 19, 2009.  *See Reply* 15, n. 2; *TAC* ¶ 12.  Plaintiff's Motion also seeks appointment of Plaintiff Tidenberg as class representative and her counsel, Balestriere Lanza PLLC, as class counsel.

II.     Legal Standard

A court may certify a class only if a plaintiff meets all the prerequisites of Federal Rule of Civil Procedure 23(a) and at least one of the requirements of Rule 23(b).  *See* Fed. R. Civ. P. 23; *Valentino v. Carter-Wallace, Inc.,* 97 F.3d 1227, 1234 (9th Cir. 1996).  The burden lies with the plaintiff to establish that the Rule 23(a) and Rule 23(b) requirements have been met.  *Zinser v. Accufix Research Inst., Inc.,* 253 F.3d 1180, 1186 (9th Cir. 2001).

---

[2] Plaintiff's Complaint adopts the definition of "shill bidding" allegedly used in Bidz.com's own "Glossary of Auction Terms": "[b]ogus bidding by an accomplice of the seller with the purpose of raising the price of an item."  *Id.* at ¶ 2.  Plaintiff's Motion articulates its "shill bidding" allegations in similar terms.  *See Motion* 1:19-21.  At oral argument, however, Plaintiff offered a far more expansive definition of "shill bidding."  In essence, Plaintiff argued that Defendant engages in "shill bidding" by failing to require that all winning bidders make payment.  The Court will hold Plaintiff to the definition of "shill bidding" on which this case has been proceeding for well over a year, particularly as Plaintiff's Reply states: "Plaintiff does not allege that Defendant *allows* shill bidding on its service, Plaintiff alleges that Defendant *actively* shill bids in its own actions [sic]."  *See Reply* 2:20-22 (emphasis in original).

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-5553 PSG (FMOx) | Date | January 7, 2010 |
|---|---|---|---|
| Title | Marla Tidenberg v. Bidz.com | | |

Under Rule 23(a), a plaintiff must demonstrate that (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the class representatives are typical of the claims or defenses of the class, and (4) the class representatives will fairly and adequately protect the interests of all members of the class.  Fed. R. Civ. P. 23(a).

If all four prerequisites of Rule 23(a) are satisfied, a plaintiff must also establish that one or more of the grounds for maintaining the suit under Rule 23(b) are met.  Those grounds are (1) that there is a risk of substantial prejudice from separate actions, (2) that declaratory or injunctive relief benefitting the class as a whole would be appropriate, or (3) that common questions of law or fact predominate and the class action is superior to other available methods of adjudication.  *See* Fed. R. Civ. P. 23(b).

III.   Discussion

   A.   The Class Definition

It is well settled that in addition to meeting the explicit requirements of Rule 23, a party seeking class certification must meet certain implicit, "threshold" requirements, namely, those of establishing that an identifiable class exists and that the representative plaintiff is a member of the proposed class.  *See* 5 *Moore's Federal Practice* § 23.20 (Matthew Bender 3d ed.) (citing, inter alia, *In re A.H. Robins Co, Inc.,* 880 F.2d 709, 728 (4th Cir. 1989)).

Thus, "[a]n implied prerequisite to certification is that the class must be sufficiently definite." *Mazur v. eBay, Inc.,* 257 F.R.D. 563, 567 (N.D. Cal. 2009) (internal quotations omitted).  This means that the class definition must be "precise, objective, and presently ascertainable," *see id.*, and must not require the court to "make a determination of the merits of the individual claims to determine whether a particular person is a member of the class."  5 *Moore's*, § 23.21[3][c]; *Heffelfinger v. Elec. Data Sys. Corp.,* 2008 U.S. Dist. LEXIS 5296, at *26-29 (C.D. Cal. Jan. 7, 2008) (Morrow, J.) ("Where . . . a decision on the merits of a person's claim is needed to determine whether a person is a member of a class, the proposed class action is unmanageable virtually by definition.") (internal quotations omitted).  Indeed, the need for a definition that permits identification of class members is particularly important where a plaintiff seeks certification under Rule 23(b)(3), because it determines those "who would be (1) entitled to relief, (2) bound by any judgment, or (3) both."  *See* 5 *Moore's,* § 23.21[3][d]; *Heffelfinger,* 2008 U.S. Dist. LEXIS 5296, at *29.

**O**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-5553 PSG (FMOx) | Date | January 7, 2010 |
|---|---|---|---|
| Title | Marla Tidenberg v. Bidz.com | | |

Here, Plaintiff has defined the proposed class by reference to individuals who won Bidz.com auctions in which other bidders were shill bidders. *See Motion* 2:20:3-2. To determine whether a particular Bidz.com auction winner is a member of the class, then, one must determine whether a shill bidder participated in that auction. At oral argument, however, Plaintiff's counsel confirmed what the pleadings and papers in this case have already indicated: Plaintiff's evidence of shill bidding by Defendant is entirely circumstantial. In particular, Plaintiff's case for shill bidding depends heavily on analyzing the bidding histories of Defendant's auctions, scouring those histories for the supposed telltale signs of a shill bidder, such as the use of suspicious bidder names, *see TAC* ¶ 65, or the presence of suspicious bidding patterns. *See Plaintiff's Motion for Sanctions for Spoliation of Evidence ("Plaintiff's Motion for Sanctions")* 1:16-2:2. This method for establishing which Bidz.com auctions, if any, involved a shill bidder would be difficult enough, given the sheer number of auctions at issue (roughly one million, according to Plaintiff, *see Motion* 7:6-9) and the nature of the assumptions and inferences involved. But, what is more, the parties acknowledge that bidding histories for auctions occurring prior to December 2007—that is, for over half the auctions covered by the Class Period, including those won by Plaintiff Tidenberg—are no longer even available.[3] Those lost bidding histories, as Plaintiff herself admits, "were most likely the best evidence of Bidz's shill bidding practices." *Id.* at 13:6-8. For over half the Class Period, then, there appears to be no precise and reliable method for determining which Bidz.com auctions, if any, involved shill bidders, and thus no precise and reliable method for objectively ascertaining the identities of class members, or even for establishing that Plaintiff herself is a member of the proposed class.

A closely related problem is that Plaintiff has impermissibly incorporated the substance of her claims into her class definition. That is, because Plaintiff defines class membership by reference to individuals who won auctions against shill bidders, determining class membership under Plaintiff's definition essentially requires resolving the merits of each individual's claim that he or she was defrauded by the presence of a shill bidder. This by itself renders the class action "unmanageable virtually by definition," *see Heffelfinger,* 2008 U.S. Dist. LEXIS 5296, at 28-29; 5 *Moore's*, § 23.21[3][c], and makes Plaintiff's class definition unacceptable.

The Court notes, too, that even if Plaintiff were able to establish (circumstantially, and without the benefit of "likely the best evidence of Bidz's shill bidding practices") that Defendant engaged in shill bidding in virtually every auction during the Class Period, Plaintiff's class

---

[3] This subject is addressed at length in the Court's December 1, 2009 order denying Plaintiff's Motion for Sanctions. *See* Dkt. # 117.

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-5553 PSG (FMOx) | Date | January 7, 2010 |
|---|---|---|---|
| Title | Marla Tidenberg v. Bidz.com | | |

definition would not be sufficiently definite. As Plaintiff's counsel emphasized at oral argument, it appears that upwards of 40% of winning bidders during the Class Period elected, for whatever reason, not to make payment to Bidz.com for items won at auction.[4] *See Reply* 3:11-14; *Liu Decl. in Support of Defendant's Motion for Rule 11 Sanctions* (Dkt. # 68-4). Plaintiff's class definition does not exclude these non-paying winners. Yet, presumably, none of them would be entitled to any form of relief on Plaintiff's claims, whether in the form of damages or restitution. Thus, even assuming Plaintiff were able to establish conclusively that shill bidders participated in every auction during the Class Period, Plaintiff's class definition would fail to serve one of its essential functions, namely, to identify those individuals who are entitled to relief. *See* 5 *Moore's,* § 23.21[3][d]; *Simer v. Rios,* 661 F.2d 655, 670 (7th Cir. 1981) ("[I]dentifying the class insures that those actually harmed by defendants' wrongful conduct will be the recipients of the relief eventually provided.").

Finally, while the Court has the power to modify proposed class definitions to make them sufficiently definite, *see Mazur,* 257 F.R.D. at 568, the Court does not find such revision appropriate here. In sum, the Court does not readily see how to revise Plaintiff's class definition in a manner that will both overcome the aforementioned difficulties and achieve what the Court discerns to be Plaintiff's goals in this case, to the extent the Court can discern those goals. The Court is particularly reluctant to intrude upon what appears to be a strategic choice by Plaintiff to modify the class definition alleged in the Complaint.[5] Accordingly, the Court denies Plaintiff's Motion on the grounds that Plaintiff has failed to establish that an identifiable class exists and that the representative plaintiff is a member of the proposed class. *See In re A.H. Robins Co.,* 880 F.2d at 728.

      B.    <u>Rule 23(b) Requirements</u>

Plaintiff seeks certification of the proposed class under Rule 23(b)(3), which requires that common questions of law or fact predominate and that the class action is superior to other available methods of adjudication. *See* Fed. R. Civ. P. 23(b)(3). The Court determines, however, that even if Plaintiff were able to satisfy the requirements of Rule 23(a) based on the

---

[4] At oral argument, Plaintiff's counsel claimed that this number now appears to be greater than 50%.

[5] The Complaint alleged a class that encompassed "[a]ll persons in the United States who won auctions operated by Bidz.com" during the Class Period. *See TAC* ¶ 12.

**O**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-5553 PSG (FMOx) | Date | January 7, 2010 |
|---|---|---|---|
| Title | Marla Tidenberg v. Bidz.com | | |

class definition she has proposed, she would not meet the requirements of Rule 23(b)(3), at least with respect to those claims for which she seeks damages.

In particular, the Court finds that Plaintiff fails to meet the requirements of Rule 23(b)(3) for two, closely related reasons. First, even assuming Plaintiff can establish the identities of those who won auctions in which shill bidders participated, there remains the question of whether every such individual suffered injury from the shill bidders' participation. The significance of this question and the absence of a class-wide method for answering it preclude the "predominance" of any common questions of law or fact. *See Mullen v. Treasure Chest Casino, L.L.C.,* 186 F.3d 620, 627 (5th Cir. 1999) (indicating that "predominance" is determined not by counting the number of common issues, but by weighing their significance); *Thompson v. Clear Channel Communs., Inc. (In re Live Concert Antitrust Litig.),* 247 F.R.D. 98, 135 (C.D. Cal. 2007) (holding that "where fact of damage cannot be established for every class member through proof common to the class," the need to establish liability for individual class members defeats Rule 23(b)(3) predominance) (citing, *inter alia, Bell Atlantic Corp. v. AT&T Corp.,* 339 F.3d 294, 302-03 (5th Cir. 2003)).

Second, the class action is not a "superior" way of proceeding in this case because Plaintiff has presented no reliable method for determining the amount of damages across the class. *See Windham v. American Brands, Inc.,* 565 F.2d 59, 68 (4th Cir. 1977) (observing that while individualized claims for damages offer no barrier to class certification where they can be established by a "virtually mechanical task, capable of mathematical or formula calculation," the class action may be rendered unmanageable where the issue of damages does not lend itself to "such a mechanical calculation"); *In re Medical Waste Services Antitrust Litigation*, 2006 WL 538927, *8 (D.Utah March 3, 2006) (stating that under Rule 23(b)(3) "plaintiffs are required to demonstrate that a reliable method exists for calculating damages class-wide") (citing, *inter alia, Windham,* 565 F.2d at 70).[6]

Review of the report of Professor Ken Steiglitz, submitted by Plaintiff in support of its Motion, only confirms the Court's in its conclusion. The report ultimately estimates that "it is plausible that the total damages caused by shill bidding amount on the average to at least 10 to 20% of overall sales." *See Lanza Decl.* ¶ 7, Ex. F at p. 8. Professor Steiglitz's analysis, however, hardly supports that estimate.

---

[6] As Plaintiff herself explains, "When considering damages at a class certification stage, a Court needs to determine whether or not damages are ascertainable." *Motion* 12:19-20 (citing *Burdick v. Union Sec. Ins. Co.,* 2008 U.S. Dist. LEXIS 108616 (C.D. Cal. March 25, 2008)).

**O**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-5553 PSG (FMOx) | Date | January 7, 2010 |
|---|---|---|---|
| Title | Marla Tidenberg v. Bidz.com | | |

Professor Steiglitz states, for instance, that for auctions whose complete bidding histories are available, "we can ascertain exactly what [direct] effect any shill bids had on the final price paid" by noting how much the winning bidder had to raise the price in order to beat the shill bidder.  *See id.,* Ex. F at 5.  This calculation, however, expressly assumes a simplified scenario in which no bidders intervene between the shill bid and the winning bid—an assumption that neither Plaintiff nor Professor Steiglitz attempts to justify under the circumstances of this case.  Consequently, Professor Steiglitz's analysis fails to address situations in which other bidders did in fact intervene between the shill bidder and the winning bidder and, thus, whether the winning bidder in such a situation suffered any injury from the shill bid—a proposition that is not at all self-evident.  Finally, the Court notes that Professor Steiglitz's comments on this point are of very limited use since, as noted, bidding histories are no longer available for most of the auctions at issue in this case.

With regard to auctions whose bidding histories are not available, Professor Steiglitz admits that "we are forced to retreat to estimating damages to the legitimate winner on a theoretical, statistical basis," which is "necessarily much less accurate than knowing the actual bidding histories."  *See id.*  In fact, Professor Steiglitz cautions that his report offers "only the simplest and roughest estimate" and that "very much more detailed calculations are not justified" because, among other things, "mathematical models for the valuations that bidders attach to items are quite uncertain, as are models for their behavior."  *See id.*  Professor Steiglitz nevertheless proceeds to offer an algebraic equation meant to capture the aforementioned vagaries of human behavior.  He then concludes, "Given the uncertainties in this analysis, I would caution the reader to draw a conclusion only this strong: that in the situation where we might expect three to five legitimate bidders, and where the seller is willing to tolerate a one-third chance of buying in, a reasonable estimate of the illegitimate gain collected by a shill bidding seller is at least 10 to 20%."  *Id.*  Considering the emphatic uncertainty and abundant provisos on which this estimate is based, along with the degree of individualized assessment necessary to determine whether the proposed formula is even applicable, the Court finds Professor Steiglitz's method insufficiently reliable and wholly unsuitable for establishing the fact or amount of class-wide damages in this case.[7]

---

[7] The Court does not find it necessary to address in detail Professor Steiglitz's estimation of the so-called "indirect" effect that shill bidders have on auctions.  Suffice it to say that Professor Steiglitz admits that "there is no clear-cut theory, or even convincing empirical basis for estimating its magnitude."  *See id.,* Ex. F at p. 8.

**O**

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

| Case No. | CV 08-5553 PSG (FMOx) | Date | January 7, 2010 |
|---|---|---|---|
| Title | Marla Tidenberg v. Bidz.com | | |

    Plaintiff has therefore failed to establish that common questions of law or fact predominate and that the class action is superior to other available methods of adjudication. *See* Fed. R. Civ. P. 23(b)(3).

IV.    <u>Conclusion</u>

    For the foregoing reasons, the Court DENIES Plaintiff's motion for class certification and for appointment of class representative and class counsel.

    **IT IS SO ORDERED.**